FILED

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

2019 APR 26  PM 2: 50

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

DISTRICT COURT OF FLORIDA

Case No: 6:19-cv-772-ORL-37TBS

Menndek M. Cushe,

      Plaintiff,

                                         COMPLAINT

   vs.

Donald R. Jenkins,
Owner/ Jenkins Nissan

        Defendant

_____

1.   Plaintiff Menndek Cushe brings forth the following causes of actions and alleges the following:

2.   Plaintiff is an individual and resident of Lake County, Florida USA.

3.   Defendant is a corporation, and at the time of this complaint a resident of Lake County, Florida USA.

4.   Defendant's principle place of business location is DRJ-N-Lake LLC 2025 S.W. College Rd. Ocala, Florida 34471.

5.   Defendant's business of incident location is at 10234 South US Highway 441 Leesburg, Florida 34788.

6.   On or about November 15 2018, Plaintiff purchased a 2018 Nissan Altima Sudan from Defendant at the business location of 10234 South US Highway 441 Leesburg, Florida 34788.

**1**

## COMPLAINT – 1

This is a Civil Rights complaint for declaratory, injunctive and other appropriate relief brought by

Plaintiff Menndek Cushe, a United States citizen appearing *pro se*, Menndek Cushe, hereafter referred

to solely as Plaintiff, brings this complaint for violations of individual and associational rights under the

First and Thirteenth Amendments, under the 1964 Civil Rights Act, and under Title XLIV Chapter 760.08

of the Florida Statute, (Discrimination in Places of Public Accommodation). Donald R. Jenkins, hereafter

referred to as Defendant, is the owner of a company, by the testimony of his own employees, or and

former employees, of a business riddled with discriminatory intent and allowances. Not only did Plaintiff

experience such personally, but Plaintiff will show by the evidence and witnesses that a kind of subtle

and pernicious discriminatory allowance pervades the Jenkins Auto Group, and is systematic company

wide. Plaintiff asserts that this derogatory disposition is typified also by the kind of individuals which

Defendant allows in his employ, and in which is clearly demonstratable by direct contact with

Defendant's chosen company representatives, such as Jay Hurley, a company executive. Plaintiff, on or

about April 08, 2019 took his car in for service, after picking up the vehicle, Plaintiff noticed a nail in his

front tire, approximately two minutes later, Plaintiff was able to turn around, and subsequently returned

to the dealership service area at the business location. Plaintiff notified Defendant

of the nail, which was an incident occurring four previous times after a scheduled oil change, Steve

Tegleintay, who has now gone to work at Hyundai, rectified the problem. Plaintiff requested a remedy of

the problem from Tom Iso, Defendant's Service Manager, Tom Iso stated that they didn't have any tires

in, and would have to order some, suggesting that Plaintiff return the next day, a spare was placed on the

vehicle by the service workers. On the next day, Defendant's service manager stated that he would not

compensate Plaintiff for the loss, Plaintiff informed the Service Manager, (Tom Iso) that this is something

that had happened four times previously with a previous vehicle purchased from Nissan, and that Plaintiff

2

simply wanted compensation for trouble and the ruined tire. But when Plaintiff returned the next day,

Plaintiff discovered that the Service Manager (Tom Iso) had, instead of seeking any customer service

attempts, had rather used the time between the return and previous day, to 'prep and provoke' each person

in the dealership that he could find for a readiness to retaliate against Plaintiff. For instance, Ron Trukuluk

who had sold Plaintiff the vehicle, when Plaintiff walked past him on that day to see the general manager,

and spoke, Mr. Trukuluk just looked down without acknowledgement. This by itself, is possibly

insignificant, but it is just one of a number of unusual 'coincidences', all seemingly designed by

Defendant's representative to build up to some sort of grand finale at the Plaintiff's expense. Another of

Plaintiffs representatives, who presented himself as a 'corporate person', who was at the dealership that

day, when told of the situation regarding the previous nail in the tire incidents, showed very little concern,

and was extremely indifferent. He was informed that it had been noted to corporate before, Plaintiff had

been compensated for the damaged tires, and the problem had long since been resolved, yet, his

disposition followed the same pattern that one would expect from the chosen representatives of

Defendant, and he seemed to indicate that he would rather be of service to other types of customers, ones

with a more desirable racial affiliation than the Plaintiff. He also stated that 'all activity for all the cars

being worked on can be seen from that one window in front of the refreshment area,' an assertion which

is simply just not true, he was personally taken to said window by Plaintiff, and shown why it could not

be true, to which he had no comment. Since customers attend the dealership in good faith, and not by a

design to build a foundation for a lawsuit, trusting rather Nissan dealership in its claims for 'higher

customer value', and since Nissan is in possession of the majority of the witnesses who have a vested

interest in keeping their jobs, and, if not for the Plaintiff's witnesses and prior documentation, it would

be very difficult for Plaintiff to meet the burden of proof for this case. Yet Plaintiff relays to the Court

that there is sufficient evidence to support the claim, not to mention the difficulty purposely designed by

3

the dealership, to remove evidence, and rearrange the narrative to fit within a self-serving framework at

the Plaintiff's expense. Defendant, by his representatives, went on an 'alteration initiative, switching up

one employee for another, removing certain other employees, and initiating a general procedure for

'damage control,' a damage, by the way, which they made light of, and claimed did not exist. Although

this is a claim under 1964 Civil Rights Act, in United States v. Dupue-Nova, the court concurred that

application for of the Armstrong standard to racial profiling cases would require a Section 1983 claimant

to make an 'impossible' showing regarding similarly situated individuals. For this reason, in the Marshall

decision, the Tenth Circuit found that discriminatory effect could be demonstrated either by showing a

similarly situated individual, or by relying upon statistical evidence. *(See 315 F. Supp. 2d. 1144 (D*

*Kansas 2004).* The fact that a supposedly reputable dealership would go to this length in order to deny

an individual of their own claims of 'valued customers and service', and would choose to create

fabrications and resentments for a simple car tire, gives rise above the speculative level that

discrimination is more likely than not, the hidden culprit. The dealership had no previous problem with

the Plaintiff, and nothing was hinted at in that regard until 'after the complaint by Plaintiff was submitted,'

fabrications and conjectures for the purpose of retaliation. Plaintiff cannot be certain what these schemes

are in their totality, but by the actions and statements of Tom Iso and Jay Hurley, which seemed to follow

a designed plan of insinuation as a tool of their denials and cover-up initiatives. Plaintiff asserts

that the factual question of discriminatory intent may be proven by either direct or circumstantial

evidence, *(see FPC Holdings, Inc. 64 F3d. at 942,* 'motive may be demonstrated by circumstantial as

well as direct evidence, circumstantial evidence will often be a factor in these cases, for discrimination

is seldom open or notorious'). Plaintiff contends that discriminatory motivation may be reasonably

inferred from a variety of factors, including inconsistencies between the proffered reason, and other types

of customers who are 'usually not given preference in stuff like that over Caucasian customers,' as one

4

Nissan employee has stated. The Defendant would have to prove in their affirmative defense that legitimate reasons, standing alone, reasons by the way, which were never even slightly entertained until after the demand for compensation, would have induced them to such adverse action. In almost less than three days, Plaintiff went from a person sending in a grievance to corporate, to some sort of criminal. When the complaint was made to the dealership's general manager, Phil Barber, a white G.M. Plaintiff found that the next day, Phil Barber had mysteriously been 'switched' for Anthony, a black G.M. Not surprisingly, in keeping with what one would expect for the desired goals of racial ill-treatment to non-Caucasian customers from Defendant Donald R. Jenkins, while talking with Jay Hurley, and with Mr. Hurley having reiterated to Plaintiff what was just said, that Phil Barber had been just replaced with Anthony, a black G.M. Mr. Hurley states, 'that's ridiculous, we have a black G.M. at that dealership!' The malingering by the representatives of the Defendant are so ingrained, that Mr. Hurley didn't see the need to show any respect to the obvious attempt, the reason why a white G.M. would be replaced with a black G.M. to give the appearance that discrimination could not possibly be the extension of owner dispositions at that dealership, since there is there a 'black' G.M. Nevertheless, the dealership's chosen representatives provided discriminatory service and treatment, moving the interaction out of a mere customer service issue, to a discriminatory act. And yet, Plaintiff need not show that Defendant acted with a discriminatory intent or motive, but that it had a disproportionally adverse effect, and is otherwise unjustified by a legitimate rational. (*See Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Inc. 135 S. Ct. 2507, 2513).* Plaintiff will not speculate on what race or ethnicity Tom Iso is, but that it seems clear that Mr. Iso considers himself to be Caucasian, there was an ethnic joke made at the time the problem was notified to him, which he seemed to take delight in, and Plaintiff suggests that he might have found it to be more rewarding, and more serviceable to his supervisors, to show denial of black customers with proof of fiscal conservatism, than to extend customer satisfaction initiatives against those

5

deemed unworthy of such. Plaintiff thinks that this is obvious, having now discovered the subversive and racial, yet subtle discriminatory initiatives which are indictive of the Jenkins Auto Group company-wide. Mr. Iso is but an extension of the discriminatory predilections the dealer ownership wishes to extend, obviously in a fashion which is not notorious. Plaintiff has witnesses both inside and outside of the dealerships, with regards to those inside the dealership, a conversation which came about after witnessing a disgruntled Caucasian customer yelling at a Nissan supervisor resulted in Plaintiff asking the supervisor at that particular dealership what the outcome was? The representative relayed that nothing happened, meaning nothing negative happened to the Caucasian customer. From the furtherance of the conversation, as noted above, the representative, who is African America, then relayed that he had experienced this at many dealerships over the years, that the 'white customer is usually treated with more leniency when it involves things in that area, black customers are usually escorted off quickly, and business ties severed.' At least, with this, there is some degree of accountability relayed by Defendant Donald Jenkins to his employees, he seems to have known that he can't just blatantly and openly discriminate, this is the reason, Plaintiff suspects, why the Service Manager Tom Iso came up with the 'Plaintiff yelled at me' fabrication. The witness also stated that this is something seen very often in the dealerships in this area that he has worked in over the years, when asked what dealerships he noticed it in as an employee, surprisingly, two dealerships were brought up by him, another, Plaintiff will not mention, and Jenkins Nissan. Plaintiff confirmed what he had said, and relayed that, since the conversation then went on to mention discriminatory expectations in certain areas, 'that area, such as in Mt. Dora and surrounding areas, where even the chief of police makes racial statements, is where I have found discrimination more openly,' to which the witness agreed, responding with 'places like Orlando and Miami, places of tourists attraction and diversity, I usually didn't see any discrimination, but in dealerships in those areas, dealerships like that, I see it all the time!' The evidence will show that when Tom Iso told Plaintiff that he was going to

6

do nothing about the damaged tire, that no 'confrontation' occurred, although Plaintiff was not happy about it, Tom Iso, the Service Manager, was told that Plaintiff would take it up with corporate, a notice which Tom Iso seemingly had little concern over. Then, after the next day, when Tom Iso had discovered that corporate, and his G.M. Phil Barber had been notified, then did Tom Iso decide to follow and harass Plaintiff, and it was then that Tom Iso came up with the invention that Plaintiff 'yelled at him.' Plaintiff did yell at Tom Iso, out of exasperation for his constant following and attempts to 'bait' the Plaintiff. Defendant violated Plaintiff's clearly established statutory or constitutional rights, of which a reasonable person would have known, *Allen v. Guerrero 276 Wis.2d. 679, 688 N.W. 2d. 673 (Ct. App. 2004)*. Plaintiff asserts that the Defendant's conduct was both intentional and reckless, it is clear that the Defendant wished to cause harm by interjecting harassment and intimidation into the scenario, as he knew that it was ultimately an issue and allowance in the hands and approvals of the Nissan ownership. Defendant placed Plaintiff in a situation of danger that a non-black customer would not otherwise have faced, Defendant acted within the scope of his employment, a scope which allowed Caucasian customers to receive more 'leniency' than black customers.

## COUNT 1 – NEGLIGENCE

Defendant failed to perform the duties of the dealership in a safe and effective manner, leading to the injuries sustained by the Plaintiff, offered less service to Plaintiff, and created a barrier, retaliated against Plaintiff, making services inaccessible, further revealing their agreement in the alleged type of mindset by allowing continual employment to certain employees known for making racial insinuates against non-Caucasian customers, allowing disparate treatment against the same. The whole claim of this dealership about customer service, and customer value, is but a sham, the goal is to not only make as much profit

7

as possible, but to do it in disregard to the Federal Statutes, even to such a degree, that any hindrance to that goal, especially customer complaints by non-Caucasian customers, is cast aside as a nuisance. Punitive damages may be awarded against a defendant if the plaintiff can show intentional or reckless indifference to a federally protected right, and Plaintiff asserts that if all the company has as a responsibility to the Federal Statutes is to 'switch up' white supervisors with black ones, and fabricate from an employee huddle a 'protective game plan,' then the statutes are of no effect, and their purpose defeated, *see Smith v. Wade 461 U.S. 30 (1983)*. These types of capricious and arbitrary acts challenge both the Federal laws and the State Public Accommodation Laws requiring equal service to all customers. It seems the dealership has a type of religious discriminatory belief, an infection, which is pervasive, and allowed to employees against non-Caucasian customers, and in which Defendant's representative, Jay Hurley, feels can be 'dissipated by statistical maneuverings.'

## COUNT 2 – HARRASMENT

Defendant followed the Plaintiff in a threatening manner with ill and malicious intent after numerous requests to cease were ignored, what right does Tom Iso have to attach sinister implications to Plaintiff's relaying of concern about bad service in contradiction to the Florida Statute? The management there readily brought his story, even so much so, that Tom Iso was allowed to make himself the victim, after Plaintiff, in complete aggravation, yelled at him to 'stop his following with aggravating comments of accusatory nature.' The initial concerns sent to corporate bear out these allegations, how that Tom Iso systematically and methodically 'prepped and prepared' the dealership, making the grand finale of his scheme a 'trespass threat.' Defendant, at no time, discussed or mentioned to Plaintiff, or his supervisors, the initial report of concern, but showed a heightened and active opinion regarding its denial, so much so, that he initiated procedures regarding retaliation against Plaintiff. The new general manager, Anthony,

8

who stated that 'he didn't know the details of the problem, or what was going on,' did seem, somehow, to know enough to say that 'this is private property, and that 'Tom Iso had the right to follow Plaintiff around if he wanted to.' Plaintiff asked Anthony how many other customers were treated as suspicious persons for submitting a concern to corporate? And why would a person who works in the service area need to follow a Nissan customer around through every place of the dealership from front to back, and then out again to the service area? Anthony had no answer, but stated again that he 'didn't know anything about it.' The plan of the Defendant was quite easy to discover, the goal was to aggravate the Plaintiff, then use the Plaintiff's frustration and response to the provocation as a proof of guilt against the Plaintiff. Tom Iso kept tirelessly trying to 'segregate' the Plaintiff off into isolated areas for confrontation, he successfully conveyed the general disposition of Defendant, especially by the aid of Jay Hurley, Defendant's chosen representative, who deliberately extended the Defendant's racial disdains against Nissan's pledges of customer satisfaction. This, both policy wise, and statue wise, denied the full enjoyment of every customer to their goods and services, violating the Plaintiff's right and expectation of fair and equal treatment. After the incident, Plaintiff contacted immediately the corporate representative Lashandra of Dave Mazur representative, Plaintiff relayed that what was advised previously was in fact good advice, to go to another dealership, and that Plaintiff didn't know that they meant 'not to go back to that dealership'. They were in fact suggesting another dealership in order to avoid retaliation, in hindsight, it might have been best to have comprehended that advice. Plaintiff asserts and alleges that Defendant knew what he was doing by constantly making the environment inhospitable as a tool of discrimination, he demonstrated a power against the Plaintiff by his discrimination goals, by having employees under his authority as useful aids to implement both his will in that regard, and hence, also, the denial of equal services. Slurs, and other verbal or physical conduct relating to an individual's gender, race, ethnicity, religion, sexual orientation, or any other basis, constitute harassment, when such

**9**

behavior has the purpose or effect of interfering with service performance, or creating an intimidating, hostile, or offensive environment. Harassment includes, but is not limited to, leaning over, cornering, offensive teasing, jokes, remarks, ethnic or religious baiting, threating of physical assaults (Defendant screamed out threats to trespass, and about getting trespass forms, and went about indicating procedures to do so) offensive looks or gestures, demeaning or abusive comments (at one point, Tom Iso once again approached Plaintiff to argue over whether Plaintiff had the right to submit a complaint to corporate office, the continuation of the harassment was a design to 'bait' the Plaintiff into a usable scheme for the dealership, Tom Iso's repeated distractions exceeded the use of the word nuisance, and was designed to sensitize the Plaintiff to standards of decency. Plaintiff asserts that, a brief revue of the company's non-selected statistics, internal operations which extend to actual facts, will clearly demonstrate the claims of discrimination. Tom Iso was more than confident in his allowance to enact his phycological harassment, that which is often difficult to detect, leaving no evidence other than the victim's reports or complaints, and causes one often to have overwhelming torment, as in this case with the Plaintiff, Plaintiff is already in treatment for Veteran related depression and anxiety.

## COUNT 3 – DISCRIMINATION

Owner knowingly and willfully encouraged an environment conducive to discriminatory conduct, rewarding employees for fostering such, or knowingly and conveniently allowing for the sake of profit and or other reasons, a condition to exist in which the Plaintiff, as a non-Caucasian customer, is in danger of suffering civil rights violations. The Defendant's silence is further evidence of a quite approval of the desired racial dispositions extended from him through his dealership representatives. Plaintiff further asserts that the sudden switching of the white general manger with a black general manager, after getting wind that Plaintiff alleged that he was discriminated against, supports the inference of discriminatory

**10**

purpose. Further more, it is not necessary to plead the existence of a similarly situated non-minority group when challenging a law of policy that contains an express racial classification, *see Brown v. City of Oneonta 221 F3d. 329, 337 (2nd Cir. 2000).* Rather, because the policy itself establishes a direct connection between the racial classification, and the Defendant's enforcement action, in this case, an action done against the Plaintiff for racial reasons, is subject then to strict scrutiny under the Equal Protection Clause. Plaintiff submits that the act had a discriminatory effect, and that it was motivated by a discriminatory purpose. To establish discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were treated differently, Plaintiff informs that there is evidence to address this crucial question. Not only that, but Tom Iso's lie is an obvious fabrication, his trespass screams came about, not at the time when it was relayed to Plaintiff that he wasn't going to compensate for the loss, but afterwards, after the complaint had been submitted to corporate, and Plaintiff yelled at him, after his following and harassment had become intolerable. It's the classic scenario, one person suddenly becomes a victim after the other person submits a complaint or report of wrong doing, previously they had no accusations, but then, afterwards, they go about to 'conjure up justifications' for themselves as the new-found victim. Defendant's allegation that Plaintiff had 'prior history,' also does not make sense, and raises concern in relation to the assertions of Plaintiff regarding the planning of a scheme. Plaintiff supposes that by 'prior history', Defendant means that there was a prior problem with service, and thus, insinuates that because of it, Plaintiff was the problem by taking allowance, and by having the audacity as a non-Caucasian, to notify corporate in the chain of command process. The problem then, which had ceased after the first notice, is the same problem as now, the dealership simply cannot enact nail in tire scams against the customer, and then tell the customer that because of his or her race, that there is no recourse for it, Plaintiff was under the impression that after the first resolution, the problem was remedied. The 'prior history' accusation then fails miserably, because, since that time until

11

now, the only 'history' that Plaintiff has had with service, is a compliment sent in to corporate concerning one of their service workers for good service. Plaintiff therefore suspects that the situation may have re-arisen out of a force of the Defendant's vicious racial predilections, it could be possible that the previous G.M. Steve Tegleintay, who remedied the previous problem, although he was Caucasian, was despised for remedying the situation for a non-Caucasian customer in contravention of the racial and fiscal goals of the dealership's owner, and so, was subsequently removed because of it. This, compounded by the fact that, when Tom Iso and Mr. Hurley were notified of it, the unconcern and malingering was immediate, and riddled with frivolity, almost as a foreknowledge and or pre-planned incident. The speed at which Jay Hurley decided to choose malingering as an option was also fascinating, although there are too many instances by conversation with him to relay them all herein. For instance, at the beginning of Plaintiff's conversation with Defendant's representative Jay Hurley, he stated, 'I know nothing about any of it, haven't heard a thing about it!' less than a minute later, he stated, 'when I have six of my guys telling me one thing, and just the customer, I believe my guys!' Plaintiff asked him what six guys he was talking about? Plaintiff never was able to receive an answer concerning the 'six' mystery people that Mr. Hurley was speaking of. Plaintiff asserts and alleges that Defendant violated the 1964 Civil Rights Act, and the Florida Statute, by denying service by means of discrimination, and by inciting the refusal of service, by racially profiling the Plaintiff, designating Plaintiff into a disparate group for demanding compensation for mishandled, or property returned damaged, and for attempting to ensure equal services which only Caucasian customers would receive. Plaintiff needed to be constantly followed, being in a class of one likely to engage in unlawful behavior at the dealership, based upon a designated race more likely to be involved in some type of activity detrimental to the dealership. Proof of this, the allowance and free will demonstrated by the non-Caucasian customer in submitting a complaint to the dealership's

**12**

corporate office without the dealership's approval. And any non-Caucasian person, of such, if allowed to roam free, could present a danger to all within the dealership, this surely is the reason why Plaintiff was told that it was 'private property,' and that Tom Iso was allowed to 'follow Plaintiff around if he desired.' The racial template allowed by Defendant made Plaintiff disproportionately the subject of racial profiling, the Defendant's representative diverted the scrutiny from himself, which Plaintiff's complaints had caused, and received the license from his supervisors to deny Plaintiff the freedoms that other customers receive based upon the Plaintiff's race or and ethnicity. Plaintiff suspects that the information provided by the witnesses, which go even further than discrimination of non-Caucasian customers is also true, the relaying that a search of the records will also convey that a higher percent of the time, people of color who were more qualified than their white counterparts, still received higher pricing offers from the dealer, and that whites are offered more financing offers, such a s loans, than people of color, even though non-whites had the better credit rating. In summation, Plaintiff requests the courts allowance for any amendments to any errors of law in its application to this case, Plaintiff's meeting with court counsel on designated days at the Federal Courthouse showed that for many simple questions not involving legal advice or case law, example Serena, that court attorneys didn't even know the answers to most of the questions.

## **DAMAGES**

Plaintiff re-alleges and incorporates by reference all of the preceding paragraphs in this complaint, trial by jury on all issues so triable, general and special compensatory damages, punitive damages, injunctive relieve, and such further and different relief as is just and proper, or that is necessary to make Plaintiff whole. Plaintiff seeks compensatory damages in the amount of $300,00,00 dollars together with fees and court costs.

I HEREBY CERTIFY that I filed today, Friday April 26, 2019 the foregoing with the Federal Clerk of the Court for the Middle District of Florida, which will send notification of such filing to all persons registered for this case, including the Defendant's Counsel.

Dated this 26 day of April 2019
P.O. BOX 597
Astatula, Florida 34705
Phone (772) 333-9793

_____
Menndek Cushe *Pro Se*

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

_____ Division

|  |  |
|---|---|
| MENNDEK MANdENiLEK CUShE | Case No. _____ |
| *Plaintiff(s)* | *(to be filled in by the Clerk's Office)* |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Jury Trial: *(check one)* ☑ Yes ☐ No |
| -v- | |
| DONAld R. JENKiNS | |
| *Defendant(s)* | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.  Do not include addresses here.)* | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Non-Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | **Menndek Cushe** |
| Address | **P.O. Box 597** |
| | **Astatula, Florida 34705** |
| | City          State          Zip Code |
| County | *Lake* |
| Telephone Number | *772 . 333 . 9793* |
| E-Mail Address | *FALASALE @ 49400.COM* |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | *Donald R. Jenkins* |
| Job or Title *(if known)* | *Owner Jenkins Nissan* |
| Address | *DRJ-N-Lake LLC 2025 S.W.* |
| | *College Rd. Ocala FL. 34471* |
| | City          State          Zip Code |
| County | *Lake* |
| Telephone Number | *352 . 815 . 2413* |
| E-Mail Address *(if known)* | |

☐ Individual capacity    ☐ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Address | |
| | City          State          Zip Code |
| County | |
| Telephone Number | |
| E-Mail Address *(if known)* | |

☐ Individual capacity    ☐ Official capacity

Page 2 of 6

Defendant No. 3
    Name                          _____
    Job or Title *(if known)*     _____
    Address                       _____
                                  _____
                                    *City*         *State*         *Zip Code*
    County                      _____
    Telephone Number        _____
    E-Mail Address *(if known)*   _____

☐ Individual capacity     ☐ Official capacity

Defendant No. 4
    Name                          _____
    Job or Title *(if known)*     _____
    Address                       _____
                                    _____
                                    *City*         *State*         *Zip Code*
    County                      _____
    Telephone Number        _____
    E-Mail Address *(if known)*   _____

☐ Individual capacity     ☐ Official capacity

## II.     Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.     Are you bringing suit against *(check all that apply)*:

    ☐ Federal officials (a *Bivens* claim)

    ☐ State or local officials (a § 1983 claim)

B.     Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

C.     Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

---

D.    Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of federal law.  Attach additional pages if needed.

---

## III.   Statement of Claim

State as briefly as possible the facts of your case.  Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.    Where did the events giving rise to your claim(s) occur?

10234 S. U.S. Highway 441
Leesburg, FL. 34788

B.    What date and approximate time did the events giving rise to your claim(s) occur?

on or about April 8th 2019
1 P.M. April 9th and 11th
2 P.M. 2:30 P.M. respectfully

C.    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

Harassment, intimidation, Ethnic
insinuation, discrimination
unequal treatment
Numerous Employees witnessed it, their
names are Not known

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## IV.   Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Mental distress, Emotional distress, psychosual pain. Noted to physician, Medical treatment by that Physician ongoing

---

## V.   Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

$ 300,000.00 in compensation for general and special compensatory damages, punitive damages and injunctive relief.

---

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        April 26, 2019

Signature of Plaintiff

Printed Name of Plaintiff        MENNDEK M. CUShE

### B.   For Attorneys

Date of signing:        _____

Signature of Attorney        _____

Printed Name of Attorney        _____

Bar Number        _____

Name of Law Firm        _____

Address        _____
        _____

|  | City | State | Zip Code |
|---|---|---|---|

Telephone Number        _____

E-mail Address        _____

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

_____ Division

| | |
|---|---|
| MENNDEK MANDENILEK Cushe ) ) ) ) Plaintiff(s) *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* -v- Donald R. Jenkins ) ) ) ) ) ) ) ) ) ) ) Defendant(s) *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Case No. _____ *(to be filled in by the Clerk's Office)* Jury Trial: *(check one)* ☑ Yes ☐ No |

## COMPLAINT FOR A CIVIL CASE

I.    **The Parties to This Complaint**

A.    **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name            Menndek Cushe
Street Address   P.O. Box 597
City and County   Astatula, Florida 34705
State and Zip Code
Telephone Number  772.333.9793
E-mail Address    Falasahe@yahoo.com

B.    **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Melinda Custie
P.O. Box 593
Astatula, Florida 34705

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

Name                          *Donald R. Jenkins*

Job or Title *(if known)*      *Owner Jenkins Nissan*

Street Address                 *DBJ-N-Lake LCC*

City and County                *S.W. College Rd.*

State and Zip Code             *Ocala, FL. 34471*

Telephone Number               *352. 815. 2413*

E-mail Address *(if known)*

Defendant No. 2

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Defendant No. 3

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Defendant No. 4

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

☑ Federal question                           ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

1964 Civil Rights Act, First and Thirteenth Amendments, and Title XLIV, Chapter 760.08 Florida Statute

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)* _____ , is a citizen of the State of *(name)* _____ .

b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ ,

and has its principal place of business in the State of *(name)* _____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)* _____ , is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____ .

Page 3 of 5

b.  If the defendant is a corporation

The defendant, *(name)* _____ , is incorporated under

the laws of the State of *(name)* _____ , and has its

principal place of business in the State of *(name)* _____ .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.  The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III.  Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

Plaintiff violated the 1964 civil Right Act and the Florida Statute XLIV Ch. 760.08

## IV.  Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

$ 300,000.0 for general and special compensatory damages, punitive damages and injuctive relief.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 4- 26-2019

Signature of Plaintiff

Printed Name of Plaintiff MENNDEIL M. CYSHE

### B. For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address